**Kaufman Lieb Lebowitz & Frick**
attorneys at law

(212) 660-2332
10 E. 40th St., Suite 3307
New York, NY 10016
www.kllf-law.com

March 30, 2021

**By ECF**

Hon. Margo K. Brodie
United States District Judge
United States District Court
Eastern District of New York

Re:   *Gelbard et al. v. City of New York*, No. 1:20-CV-3163 (E.D.N.Y.)

Your Honor:

We write on behalf of Plaintiffs in opposition to Defendants' pre-motion letter concerning their anticipated motion for judgment on the pleadings on behalf of Defendants Mayor Bill de Blasio, NYPD Commissioner Dermot Shea, and NYPD Chief of Department Terence Monahan (collectively, the "Supervisory Defendants"). The Supervisory Defendants' anticipated motion should be denied because Plaintiffs' amended complaint plausibly pleads that they took actions that knowingly, foreseeably, and proximately caused the use of objectively unreasonable force against Plaintiffs. Under longstanding precedent, that is sufficient to state an excessive force claim against any defendant—supervisory or otherwise.

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), involves an Eighth Amendment deliberate indifference claim challenging unlawful conditions of confinement. Such a claim has both an objective and a subjective component. The plaintiff must plead (a) conditions of confinement that *objectively* pose an unreasonable risk of serious harm, and (b) *subjective* deliberate indifference on the part of the defendant, meaning that the defendant had actual knowledge of and disregarded an excessive risk to health or safety. *Id.* at 618-19. The Second Circuit held in *Tangreti* that the plaintiff could not rely on special rules for supervisors to escape the *mens rea* requirement that would otherwise apply to such a claim. Rather, the plaintiff had to prove that a supervisory defendant—like any other defendant—had subjective knowledge of a substantial risk of serious harm to the plaintiff, as is necessary to establish deliberate indifference. *Id.* at 612.

This holding has no impact on Plaintiffs' excessive force claims against the Supervisory Defendants here, which are governed purely by a standard of objective reasonableness and have no subjective component. *See, e.g.*, *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). It emphatically is not the law that a defendant must throw the punch or wield the baton to be held liable for excessive force against an arrestee or a person on the street. To the

Alanna Kaufman*  •  Douglas E. Lieb‡  •  David A. Lebowitz  •  Alison Frick

*Also admitted to practice in New Jersey   ‡Also admitted to practice in California

contrary, it is clearly established—including by precedential decisions post-dating *Iqbal*—that any defendant, supervisory or otherwise, can be held liable for acts that proximately cause the use of objectively unreasonable force by others. *See, e.g.*, *Terebesi v. Torreso*, 764 F.3d 217, 233-35 (2d Cir. 2014) (denying qualified immunity to defendants who devised deficient tactical plan for executing warrant, foreseeably resulting in use of excessive force against plaintiff); *Figuero v. Mazza*, 825 F.3d 89, 106-07 (2d Cir. 2016) (liability for failure to intervene). Indeed, Your Honor recently recognized in a post-*Tangreti* decision that "a person who authorizes, orders, or helps others" to violate the Fourth Amendment may be liable under § 1983, "even if he or she does not commit the acts personally." *Goonewardena v. Spinelli*, No. 15-CV-5239 (MKB), 2021 WL 61876, at *8 (E.D.N.Y. Jan. 7, 2021) (quoting *Terebesi*, 764 F.3d at 234).

Nothing about *Tangreti* changes any of this. Notably, none of the cases cited by Defendants involve excessive force claims governed by an objective reasonableness standard. *Cf. Holden v. Port Auth. of N.Y. & N.J.*, No. 17-CV-2192, 2021 WL 681040, at *15 (S.D.N.Y. Feb. 22, 2021); *Leclair v. Raymond*, No. 1:19-CV-0028 (N.D.N.Y. Jan. 12, 2021), *available at* https://cases.justia.com/federal/district-courts/new-york/nyndce/1:2019cv00028/117457/148/0.pdf; ECF No. 24, *Atkinson v. Okocha*, No. 20-CV-4497 (E.D.N.Y. Jan. 5, 2021), *available at* https://www.courtlistener.com/recap/gov.uscourts.nyed.453478/gov.uscourts.nyed.453478.24.0.pdf; ECF No. 98, *Tirado v. City of New York*, No. 19-CV-10377 (S.D.N.Y. Jan. 25, 2021), *available at* https://www.courtlistener.com/recap/gov.uscourts.nysd.526142/gov.uscourts.nysd.526142.98.0.pdf.

Here, Plaintiffs plausibly allege—in considerable detail—that Mayor de Blasio, Commissioner Shea, and Chief Monahan personally devised and/or authorized a policing strategy for the George Floyd Protests that proximately and foreseeably caused the widespread use of objectively unreasonable force. *Iqbal* itself explicitly holds that a supervisory defendant can be held liable for adopting an unlawful policy.[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

Chief Monahan personally supervised the deployment of police at numerous protests throughout the City and personally directed members of the NYPD to physically assault protesters. *E.g.*, Am. Compl. ¶¶ 95-99. Chief Monahan monitors and directs police activity in response to major protests in real time when he is not at the scene. *See id.* ¶ 101. Commissioner Shea also directs the NYPD's response to protests at the tactical level. *Id.* ¶¶ 90-91. Mayor de Blasio, according to his own public statements, "approved the broad strategies and sometimes very specific choices" that the NYPD adopted in responding to protests beginning on June 3 and June 4, including the "use of batons" against protesters. Am. Compl. ¶¶ 102-04. The Supervisory Defendants had contemporaneous knowledge of, and constantly communicated with each other about,

---

[1] Any suggestion that *Tangreti* "essentially eliminated supervisory liability" is entirely wrong, and directly contrary to *Iqbal* itself. *Cf.* Defs.' Ltr. 2 (quoting *LeClair*).

videos depicting the NYPD's surrounding, charging, and assaulting peaceful protesters. *E.g..*, Am. Compl. ¶¶ 104-05, 232-49.

      Plaintiffs also plausibly allege that Defendants Shea and Monahan directed the use of unreasonable force against peaceful protesters because they had "retaliatory animus" toward the protesters' message, as required to sustain a First Amendment retaliation claim. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Commissioner Shea stated publicly that the protesters' "anti-police rhetoric . . . disgusts me to my core" and that people who "don't have something nice to say" about the police should "keep [their] mouth closed." Am. Compl. ¶¶ 108-09. Chief Monahan has characterized police accountability protesters as "outside agitators telling people to go out and cause mayhem" and has equated advocacy for redirecting public safety funding and resources with "an anarchist agenda." *Id.* ¶¶ 112-13. The pleadings and the public record are replete with senior NYPD officials openly and proudly expressing their animus toward the protesters, and it is plausible that this animus affected their policing strategies.

                                                                               Sincerely,

                                                                               /s/

                                                                               David A. Lebowitz
                                                                               Douglas E. Lieb

cc.      All counsel of record (by ECF)